IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CATHY DUFF, | ) | CASE NO. 5:14 CV 1293 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Cathy Duff under 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security denying her applications for

disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 17. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 13.

[4] ECF # 14.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

## B.  Background facts and decision of the Administrative Law Judge ("ALJ")

Duff, who was 48 years old at the time of the administrative hearing,[10] is married and has completed high school.[11] She previously cleaned houses while self-employed[12] and worked for an agency as a home health aide.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Duff had the following severe impairments: major depressive disorder, panic disorder with agoraphobia, morbid obesity, multilevel degenerative disc disease of the lumbar spine, and chronic obstructive pulmonary disease.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Duff's residual functional capacity ("RFC"):

---

[6] ECF # 16.

[7] ECF # 18 (Duff's brief); ECF # 21 (Commissioner's brief).

[8] ECF # 18-2 (Duff's charts); ECF # 21-1 (Commissioner's charts).

[9] ECF # 18-1 (Duff's fact sheet).

[10] Transcript ("Tr.") at 9.

[11] *Id.* at 9-10.

[12] *Id.* at 11.

[13] *Id.* at 28.

[14] *Id.* at 93.

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes, or scaffolds she [sic] but can occasionally climb ramps and stairs. She can occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to fumes, odors, dust, gasses, and poor ventilation. The claimant can understand, remember, and carry out simple instructions and perform simple, routine tasks. She requires a relatively static, low stress work place with no more than infrequent changes in work settings and work processes and without strict quotas or fast-paced high production demands. The claimant can have no job related contact with the public and occasional contact with coworkers.[15]

The ALJ decided that this residual functional capacity precluded Duff from performing her past relevant work.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Duff could perform.[17] The ALJ, therefore, found Duff not under a disability.[18]

## C.    Issues on judicial review and decision

Duff asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Duff presents the following issues for judicial review:

------

[15] *Id.* at 95.

[16] *Id.* at 101.

[17] *Id.* at 102.

[18] *Id.*

-3-

- The ALJ found that Duff retained a residual functional capacity for light, unskilled, low-stress work. Does substantial evidence support this finding?

- The ALJ granted only little weight to the opinions of Duff's mental health treatment providers. Does substantial evidence support this finding?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

### A.    Standard of review – substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

_____

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.    Application of standard**

Although framed as two related inquires, this case presents the single issue of whether the ALJ properly evaluated the opinion of Nicole Melchi, a clinical counselor, who apparently examined Duff on one occasion in 2012,[22] and the opinion of Julie Stone, R.N., a psychiatric nurse who treated Duff on two separate occasions in 2012.[23]

*1.    Nicole Melchi*

The ALJ here noted that Melchi, who was defined in the ALJ's opinion as Duff's "clinical counselor," had given an opinion in May 2012 that Duff had "moderate restrictions in carrying out detailed instructions, with generally marked impairments in interacting with

---

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] Tr. at 430-31.

[23] *Id.* at 432-35, 436-37.

-5-

the public and co-workers."[24] The ALJ also stated that "Melchi further noted that [Duff] had marked limitations in responding to work pressures and changes in her routine."[25]

The ALJ proceeded to grant "little weight" to this opinion.[26] First, the ALJ observed that while Melchi "treated" Duff, she was not "an accepted medical source."[27] Then, the ALJ noted that the treatment notes did not support that degree of dysfunction, observing that while Duff experienced ongoing problems with her family, and with social isolation, "she generally retained appropriate behavior."[28] Moreover, the ALJ stated that when Duff had "consistent treatment with counseling and medication," her symptoms stabilized, "suggesting that she would be able to work within the confines of the [RFC]."[29]

Duff, for her part, does not address the primary reason given by the ALJ for giving little weight to Melchi's opinion – which is that she is not an acceptable medical source. Instead, Duff principally argues that evidence scattered through nearly 18 months of treatment notes – *i.e.*, from April 8, 2011, through September, 2012 – when read together

---

[24] Tr. at 99.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

does not show that the symptoms stabilized with treatment nor that any such stability can be maintained in a work environment.[30]

As the primary reason given for assigning little weight – the fact that Melchi, as a counselor is not an acceptable medical source –  the Commissioner correctly cites to the relevant regulation, 20 C.F.R. § 404.1527c(2), and Social Security Ruling 06-3p, as stating that neither a clinical counselor nor a registered nurse are "acceptable medical sources requiring that "good reasons" be articulated by an ALJ as to any weight assigned to opinions from such sources.[31] Indeed, as Social Security Ruling 06-3p itself states, distinguishing between acceptable medical sources and non-acceptable medical sources is "necessary" in the context of evaluating a claim for disability benefits because "only 'acceptable medical sources' can give us medical opinions," and "only 'acceptable medical sources' can be considered treating sources ... whose medical opinions may be entitled to controlling weight."

While it remains true that an ALJ "may use" evidence from non-acceptable medical sources for the purpose of "show[ing] the severity of an individual's impairment[s] and how it affects the individual's ability to function,"[32] there is no "specific criteria" provided in the regulations for precisely how an opinion from a non-approved medical source is to be

---

[30] ECF # 18 at 14-15.

[31] ECF # 21 at 10.

[32] Soc. Sec. Rul. 06-3p: Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies.

evaluated, and the ruling nevertheless provides that opinions from non-approved medical sources must be considered and should be evaluated in conjunction with the rules for acceptable medical sources, such that the claimant or any subsequent reviewer can "follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case."[33]

Here, the ALJ substantially complied with the requirements cited above as to analyzing the opinion of Nicole Melchi. First, the ALJ properly noted that as non-acceptable medical source, Melchi's opinion was not entitled to a presumption of controlling weight, nor was any heightened standard of articulation applicable when addressing what weight to give such an opinion. Further, by the very fact that Melchi's opinion was noted and discussed, the ALJ complied with the requirement to "consider" such evidence. Moreover, as the Commissioner observes, the record contains numerous treatment notes from the same period highlighted by Duff which support the ALJ's conclusion that her symptoms were not as severe as described by Melchi.[34]

I note in particular that these extensive examples from the record cited by the Commissioner go directly to the fundamental point on judicial review, which centers on whether there is substantial evidence in the record to support the Commissioner's conclusion. The fact that Duff may also locate other, arguably contrary examples does not negate the foundation for the Commissioner's decision. As the Commissioner observes, although Duff cites to many portions of the record to support her view, none of the portions she cites

---

[33] *Id.*

[34] ECF # 21 at 10-11 (citing record).

"compel the conclusion" that she is as disabled as Melchi and Stone opined.[35] Rather, Duff is merely asking the reviewing Court to re-weigh the evidence in hope of a more favorable result, something which is precluded by long-standing case law.[36]

Accordingly, for the reasons given above, I find that the Commissioner's decision to accord only little weight to the opinion of Nicole Melchi is fully in conformity with the applicable regulations and is otherwise supported by substantial evidence.

## 2.    *Julie Stone*

The decision to accord the opinion of Julie Stone, R.N., only little weight is largely supportable for exactly the same reasons as are given above. I mention only the additional point that Duff's concern that the ALJ erroneously identified Stone's opinion as that of another counselor is not essentially relevant to the final determination. Even if true, the foundation for the ALJ's decision here is that the evidence of record points to Duff's symptoms stabilizing when she receives consistent treatment with counseling and medication, such that she can be expected to work within the confines of the RFC in an employment situation.[37]

In that regard, the ALJ here, in addition to reviewing the record for examples of how Duff's symptoms improved with treatment, also compared the functional opinions of Melchi and Stone with that of consultative examiner William Mohler, a psychologist, and Patricia

---

[35] *Id.* at 12.

[36] *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)).

[37] Tr. at 99.

Semmelman, Ph.D., a state agency reviewing consultant. In both cases, the ALJ gave great weight to Mohler's opinion[38] and "significant weight" to Dr. Semmelman's opinion that Duff was not as functionally disabled as either Melchi or Stone had opined.

In according greater weight to the functional opinions of Mohler and Semmelman over those of Melchi and Stone, the ALJ acted consistently with evidence of record. In addition, this is not a situation, as was addressed in *Gayheart*, where an opinion of a non-treating source was given greater weight than that of a treating source as the result of applying a less-stringent standard of review to the non-treating source.[39]

Thus, for the reasons given earlier as well as the reasons cited immediately above, I find that substantial evidence supports the Commissioner's decision to accord only little weight to the functional opinion of Julie Stone.

## Conclusion

Accordingly, for the reasons stated above, substantial evidence supports the finding of the Commissioner that Duff had no disability. The denial of Duff's applications is affirmed.

IT IS SO ORDERED.

Dated: May 13, 2015                          s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

---

[38] *Id.* at 98 (Mohler).

[39] *See*, *Gayheart*, 710 F.3d at 379.